STATE of Wisconsin, Plaintiff-Respondent,

v.

Wyatt D. HENNING, Defendant-Appellant.†

Court of Appeals

*No. 2010AP2449–CR. Submitted on briefs May 11, 2011.
—Decided January 31, 2013.*

2013 WI App 15

(Also reported in 828 N.W.2d 235.)

† Petition for Review denied 6-14-13.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Cole Daniel Ruby* of *Martinez & Ruby, LLP*, Baraboo.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Thomas E. Dietrich*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Lundsten, P.J., Higginbotham and Blanchard, JJ.

¶ 1. HIGGINBOTHAM, J.   Wyatt Henning appeals a judgment of conviction entered on a jury verdict finding him guilty of attempted possession of a firearm by a felon and an order denying postconviction relief. The issues presented are whether: (1) the circuit court lacked subject matter jurisdiction because the crime of attempted possession of a firearm by a felon is not recognized in Wisconsin; (2) the evidence was sufficient to prove Henning's guilt beyond a reasonable doubt; and (3) Henning is entitled to a new trial on the ground that the real controversy has not been fully tried because of certain remarks the State made during its closing argument. For the reasons provided below, we affirm.

## BACKGROUND

¶ 2.   The following facts are taken from the trial and preliminary hearing. In March 2008, Henning, a felon, and his girlfriend got into a heated argument. At the time of the incident, Henning and his girlfriend resided together with their young daughter. After Henning went to work that day, his girlfriend packed her belongings and left with their daughter. Returning home from work, Henning discovered that the two had left. Soon after, Henning called his girlfriend and threatened to kill her if she did not return their daughter to him before he went to bed.

¶ 3.   Brian Kettle, Henning's co-worker, testified at trial that Henning mentioned at work that he was mad at his girlfriend. Kettle testified that Henning

called him a couple hours after work and inquired about a pistol. Kettle responded that he needed to get back to work and that he would see Henning at work the next day. Henning replied, "maybe," and hung up the phone. Kettle testified that he did not own a firearm.

¶ 4.  At trial, the parties questioned Kettle extensively about the precise words that Henning used during the phone call because of inconsistencies between his trial testimony and his testimony at a preliminary hearing. At the preliminary hearing, Kettle could not recall the specific words that Henning used during the phone call but testified that Henning asked him either, " 'do you have [a pistol]' or 'can you get [a pistol].' " At trial, Kettle indicated that, while he could not recall with certainty the precise words that Henning used, he believed that Henning asked him, "can you get a pistol." At the close of the State's case, defense counsel moved to dismiss on the ground that the State had failed to prove that Henning demonstrated unequivocally that he was attempting to possess a firearm. The court denied the motion. The jury found Henning guilty of attempted possession of a firearm by a felon, and the court denied Henning's postconviction motion. Henning appeals.

## DISCUSSION

¶ 5.  As noted above, the parties dispute whether: (1) the circuit court lacked subject matter jurisdiction because the crime of attempted possession of a firearm by a felon is not recognized in Wisconsin; (2) the evidence was sufficient to prove Henning's guilt beyond a reasonable doubt; and (3) Henning is entitled to a new trial on the ground that the real controversy has not been fully tried because of certain remarks the State made during its closing argument. We address and reject each argument in turn.

A.   Subject Matter Jurisdiction

¶ 6.   We first address whether the court lacked subject matter jurisdiction because the crime of attempted possession of a firearm by a felon is not recognized under Wisconsin law. A court lacks criminal subject matter jurisdiction when " 'the complaint does not charge an offense known to law.' " *State v. Webster*, 196 Wis. 2d 308, 317, 538 N.W.2d 810 (Ct. App. 1995) (quoting another source).

¶ 7.   Henning contends that attempted possession of a firearm by a felon is a nonexistent crime and therefore the circuit court lacked subject matter jurisdiction in this case. Specifically, Henning argues that the felon in possession of a firearm offense does not include an element of intent, citing to *State v. Black*, 2001 WI 31, ¶ 19, 242 Wis. 2d 126, 624 N.W.2d 363, and that, according to *State v. Briggs*, 218 Wis. 2d 61, 66, 579 N.W.2d 783 (Ct. App. 1998), an offense may be charged as an attempt only when the underlying offense includes an intent element. It follows, according to Henning, that because the felon in possession of a firearm offense does not include intent as an element and because an offense may be charged as an attempt only when the underlying offense includes intent as an element, the crime of attempted possession of a firearm by a felon does not exist under Wisconsin law. We are not persuaded.

¶ 8.   We begin by addressing Henning's contention that the felon in possession of a firearm offense cannot be charged as an attempted crime because of the court's holding in *Black*. At issue in *Black* was whether Black's conduct in touching a pistol met the elements of the felon in possession of a firearm offense. *Black*, 242 Wis. 2d 126, ¶ 17. Black argued that his conduct did not

meet the elements of the offense because the evidence showed only that he touched his girlfriend's pistol, while telling her that she "didn't need it," and did not show that he had a malicious intent or unlawful purpose in touching the pistol. *Id.* The court disagreed and concluded that it made no difference whether Black touched the pistol with malicious intent or an unlawful purpose because the State was required to show only that Black was in conscious possession of the firearm, meaning that Black touched a firearm with knowledge that it was in fact a firearm. *Id.*, ¶¶ 19–20. What the majority and concurrence wrestled over was whether a crime that does not require the defendant to have a specific intent but does include knowledge as a mental state element may be characterized as a strict liability crime. *Id.*, ¶¶ 23–25 (Bradley, J., concurring). Setting aside that issue, we read the majority to agree with the concurrence that the felon in possession of a firearm offense requires the State to prove that the felon had conscious possession of a firearm, which, in turn, requires proof of a mental state. We do not read *Black* to shed any light on whether a crime that requires proof of knowledge, as in this case, may be charged as an attempted crime. Accordingly, *Black* does not help Henning.

¶ 9.  *Briggs* also does not help Henning. The pertinent issue in *Briggs* was whether a person could be charged with attempted felony murder under Wisconsin law. *Briggs*, 218 Wis. 2d at 65. The State argued that the offense was a recognized crime in Wisconsin. *Id.* In rejecting the State's argument, we said that, "one cannot attempt to commit a crime which does not itself include an element of specific intent." *Id.* at 66. This is the sentence Henning relies on in arguing that an offense may be charged as an attempt only when the underlying crime includes intent as an element. In

support of the above statement, we cited *State v. Melvin*, 49 Wis. 2d 246, 250, 181 N.W.2d 490 (1970),[1] which held that the crime of attempted reckless homicide does not exist because one cannot intentionally act recklessly. The above statement in *Briggs* must be read in context, and, in context, we were simply applying the *Melvin* court's lack-of-intent reasoning to the crime of felony murder. We do not read *Melvin* or *Briggs* as purporting to establish a general attempt rule or to address whether possession crimes may be charged as attempted crimes under the rationale of these two cases.

¶ 10.   In sum, we do not read any of the cases Henning relies on as establishing a general rule that a crime may be charged as an attempt only when the crime has intent as an element. It was logical for the courts in *Briggs* and in *Melvin* to conclude that the crimes at issue in the respective cases—felony murder and reckless homicide—could not be charged as attempted crimes because of the inherent nature of those crimes. Possession crimes do not fall into that category of crimes where it is illogical to charge the crime as an attempt. Unlike the two crimes considered in *Briggs* and in *Melvin*, it makes sense that the State may charge a felon with attempting to possess a firearm. As the State points out in its brief on appeal, there is nothing inherent in the nature of possession crimes that renders these crimes inappropriate to charge under the attempt statute. *See Hamiel v. State*, 92 Wis. 2d 656, 664, 285 N.W.2d 639 (1979) (stating that a defendant may be charged with an attempted crime when he or she has " 'actually done things which are steps inten-

[1] *Melvin* was overruled in part on other grounds by *State v. Smith*, 55 Wis. 2d 304, 198 N.W.2d 630 (1972).

tionally taken in furtherance of some specific aim, and which themselves are enough to suggest clearly what that specific aim was' " (quoting another source)).

¶ 11.   As we have noted, the offense charged in this case, felon in possession of a firearm, does have an element that requires proof of a mental state. Possession under Wisconsin law requires that the defendant " 'knowingly had actual physical control of a firearm.' " *Black*, 242 Wis. 2d 126, ¶ 19 (quoting WIS JI—CRIMINAL 1343). "Knowingly" means conscious possession. *Id.*, ¶ 20. It is this feature of the felon in possession of a firearm offense that distinguishes it from the crimes considered in *Briggs* and in *Melvin* for purposes of determining whether the firearm offense may be charged under the attempt statute. For the reasons that follow, we conclude that the crime of attempted possession of a firearm by a felon is a chargeable offense in Wisconsin.

¶ 12.   To determine whether attempted possession of a firearm by a felon is a crime recognized under Wisconsin law, we must engage in statutory interpretation. Statutory interpretation is a question of law subject to de novo review. *Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 659, 539 N.W.2d 98 (1995). When interpreting a statute, we begin with the statutory language. *State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. If the meaning of the statute is plain, we stop the inquiry and apply that meaning. *Id.* We interpret statutory language "in the context in which it is used" by considering words "not in isolation but as part of a whole." *Id.*, ¶ 46. In addition, we read statutory language reasonably "to avoid absurd or unreasonable results." *Id.* " 'If this process of analysis

yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning.' " *Id.* (quoting another source). The ultimate purpose of statutory interpretation is to give full effect to the policy choices of the legislature. *See id.*, ¶ 44.

¶ 13. We begin with the attempt statute, Wis. Stat. § 939.32 (2011–12).[2] The statute provides in pertinent part:

**(1)** GENERALLY. Whoever attempts to commit a felony . . . may be fined or imprisoned or both . . .:

. . . .

**(2)** MISDEMEANOR COMPUTER CRIMES . . . .

. . . .

**(2m)** MISDEMEANOR CRIMES AGAINST FINANCIAL INSTITUTION . . . .

. . . .

**(3)** REQUIREMENTS. An attempt to commit a crime requires that the actor have an intent to perform acts and attain a result which, if accomplished, would constitute such crime and that the actor does acts toward the commission of the crime which demonstrate unequivocally, under all the circumstances, that the actor formed that intent and would commit the crime except for the intervention of another person or some other extraneous factor.

It is well established that § 939.32 "unambiguously enumerate[s] all the offenses which may be prosecuted

---

[2] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

as 'attempts.' " *State v. Cvorovic*, 158 Wis. 2d 630, 634, 462 N.W.2d 897 (Ct. App. 1990).[3] Under § 939.32(1), all felonies may be charged as attempted crimes, except for felonies excluded by statute or by case law. *See, e.g., Briggs*, 218 Wis. 2d at 66 (felony murder); *Melvin*, 49 Wis. 2d at 250 (reckless homicide). Henning does not suggest that, under this statutory scheme, the felon in possession of a firearm offense may not be charged as an attempted crime.

¶ 14. Turning to the particular language of the felon in possession of a firearm statute, and the case law further explaining the elements of that crime, we see no reason to preclude attempt liability. WISCONSIN STAT. § 941.29(2) states that a person who has been previously convicted of a felony "is guilty of a Class G felony if he or she possesses a firearm . . . subsequent to the conviction for the felony . . . ." This offense has two elements: "(1) the defendant has been convicted of a felony; and (2) the defendant possessed the firearm." *Black*, 242 Wis. 2d 126, ¶ 18. As we have established, "possession" means that the defendant knowingly had the firearm under his or her actual physical control. *Id.*, ¶ 19; WIS JI—CRIMINAL 1343. Unlike felony murder or reckless homicide, or other crimes with no state of mind element, the felon in possession of a firearm offense requires proof of knowledge. This makes the offense amenable, even under *Briggs*, to be charged as an attempted crime.

---

[3] For our purposes, the 1989–90 version of WIS. STAT. § 939.32 is substantially similar to the current version. The differences between the 1989–90 version and the current version of WIS. STAT. § 939.32 do not affect our analysis.

¶ 15.   We note that it would be absurd to conclude that the legislature did not intend to prohibit felons from attempting to possess firearms. The legislature's purpose in prohibiting felons from possessing firearms was to protect public safety and to control the conduct of felons because " 'felons are more likely to misuse firearms.' " *Black,* 242 Wis. 2d 126, ¶ 19 (quoting another source). Obviously, prohibiting felons from attempting to obtain firearms furthers this public safety purpose. Furthermore, taking Henning's contention to its logical conclusion would mean that a host of other possession crimes could not be charged under the attempt statute, including possession of an electric weapon, machine gun, and other dangerous weapons that have great potential to undermine public safety. Clearly, the legislature could not have intended such a result.

¶ 16.   For all of the above reasons, we conclude that the crime of attempted possession of a firearm by a felon is a crime recognized under Wisconsin law and that the court had subject matter jurisdiction in this case.

## B.   Sufficiency of the Evidence

¶ 17.   The parties next dispute whether the court erred in denying Henning's motion to dismiss on the ground that the evidence was insufficient to prove Henning's unequivocal intent to possess a firearm. The term "unequivocally" as used in the statute means that "no other inference or conclusion can reasonably and fairly be drawn from the defendant's acts, under the circumstances." WIS JI—CRIMINAL 580.

¶ 18.   According to Henning, the State's evidence was insufficient to prove his unequivocal intent to possess a firearm because many reasonable inferences

could be drawn from the testimony other than that he was attempting to possess a firearm, including that he "was just joking or blowing off steam after his argument with his girlfriend, [or that] he was speaking in hyperbole." Henning contends that he did not unequivocally demonstrate intent to possess a firearm because he never used any words "explicitly indicating [he] wanted a pistol for himself."

¶ 19. The test for the sufficiency of the evidence on a motion to dismiss is whether "considering the [S]tate's evidence in the most favorable light, the evidence adduced, believed and rationally considered, is sufficient to prove the defendant's guilt beyond a reasonable doubt." *State v. Duda*, 60 Wis. 2d 431, 439, 210 N.W.2d 763 (1973). Accordingly, we will not reverse the circuit court's denial of Henning's motion to dismiss as long as the jury reasonably could have found Henning guilty beyond a reasonable doubt. *See State v. Scott*, 2000 WI App 51, ¶ 12, 234 Wis. 2d 129, 608 N.W.2d 753.

¶ 20. We acknowledge that it is unclear from Kettle's testimony how Henning specifically phrased the question in which he inquired about a pistol. At the preliminary hearing, Kettle testified that he could not recall Henning's specific phrasing but that he knew that "a pistol was involved and [Henning asked] 'do you have [a pistol]' or 'can you get [a pistol].' " Several months later, at trial, Kettle indicated that he could not recall with certainty the exact phrasing but thought that Henning asked him, "can you get a pistol." Kettle conceded that Henning did not explicitly state that he wanted a pistol for himself.

¶ 21. Nonetheless, we reject Henning's contention that there was insufficient evidence that he unequivo-

cally intended to possess a firearm. It is undisputed that, a few hours before Henning called Kettle, Henning got into a heated argument with his girlfriend and threatened to kill her if she did not return their daughter to him. It is also undisputed that Henning told Kettle at work that he was mad at his girlfriend. It is in this context that Henning asked Kettle whether he had a pistol. Regardless how Henning phrased the question, it is undisputed that Henning made an inquiry about a pistol and that Kettle would not or could not provide Henning with a pistol. Under these facts, the only reasonable inference that could be fairly drawn is that Henning inquired about a pistol because he was attempting to locate a firearm that he could possess for purposes of threatening or harming his girlfriend. Moreover, his inquiry about a firearm demonstrates that Henning formed an intent to possess a firearm and would have but for the fact that Kettle would not or could not provide one. Viewing the evidence in the light most favorable to the State, we conclude that there was sufficient evidence from which the jury could find Henning guilty.

C. New Trial

¶ 22. Finally, the parties dispute whether we should exercise our discretionary reversal power and grant a new trial under WIS. STAT. § 752.35.[4] Henning contends that the State improperly remarked during closing argument that Henning stated that he wanted a firearm *for himself* when the testimony did not estab-

---

[4] WISCONSIN STAT. § 752.35 provides in relevant part: "In an appeal to the court of appeals, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from . . . ."

lish that fact. Henning argues that, because "[t]he State's entire theory of guilt was premised upon the words Henning allegedly said to Kettle," and because the State incorrectly recounted the evidence during closing argument, the real controversy has not been fully tried. We are not persuaded.

¶ 23.  To establish that the real controversy has not been fully tried, Henning must persuade us that " 'certain evidence which was improperly received clouded a crucial issue in the case.' " *State v. Cleveland,* 2000 WI App 142, ¶ 21, 237 Wis. 2d 558, 614 N.W.2d 543 (quoting other sources). Our discretionary reversal power is formidable and therefore we exercise it "sparingly and with great caution." *State v. Watkins,* 2002 WI 101, ¶ 79, 255 Wis. 2d 265, 647 N.W.2d 244.

¶ 24.  The real controversy has not been fully tried when remarks made during closing argument " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *State v. Mayo,* 2007 WI 78, ¶ 43, 301 Wis. 2d 642, 734 N.W.2d 115 (quoting another source). In closing argument, "[c]ounsel is allowed considerable latitude." *State v. Burns,* 2011 WI 22, ¶ 48, 332 Wis. 2d 730, 798 N.W.2d 166. However, counsel may not "suggest that the jury arrive at its verdict by considering factors other than the evidence." *State v. Adams,* 221 Wis. 2d 1, 19, 584 N.W.2d 695 (Ct. App. 1998). The State's remarks must be considered "in context of the entire trial." *Mayo,* 301 Wis. 2d 642, ¶ 43.

¶ 25.  While the State's summary was imprecise, we cannot conclude that the State's comments so infected the trial with unfairness as to warrant a new

trial. Kettle's testimony at trial demonstrated that he could not specifically recall the exact words that Henning used, and there is no reason to believe that the State sought to misstate Kettle's testimony or to suggest to the jury that it arrive at its verdict based on facts not in evidence. In its rebuttal argument, the State noted: "But it doesn't matter what I say, and it doesn't matter what [defense counsel] tells you. Evidence is all that matters." This comment invited the jury not to rely on the State's closing argument as evidence.

■

¶ 26. We also observe that the court instructed the jury that closing arguments are not evidence. It is well established that, "[j]urors are presumed to have followed jury instructions." *State v. LaCount*, 2008 WI 59, ¶ 23, 310 Wis. 2d 85, 750 N.W.2d 780. The jury received adequate instructions, and Henning does not point to any part of the record to suggest that the jury did not follow the court's admonition. Therefore, we conclude that the real controversy was fully tried and decline to exercise our discretionary reversal power.

## CONCLUSION

¶ 27. In sum, we conclude that: (1) attempted possession of a firearm by a felon is a crime recognized under Wisconsin law; (2) the evidence was sufficient to find Henning guilty beyond a reasonable doubt; and (3) the State's remarks during closing argument did not prevent the real controversy from being fully tried. Accordingly, we affirm.

*By the Court.*—Judgment and order affirmed.